ALEXANDER FOURNIER v. THE MAYOR AND COMMON COUNCIL OF WEST BAY CITY.

*Municipal corporations—Appropriating money—Salaries of officers —Resolutions.*

1. Strictly speaking, a resolution fixing a salary cannot be termed an act appropriating money, but it is, nevertheless, an act making an appropriation of the compensation so fixed obligatory.

2. A provision of a city charter that no resolution appropriating money shall be passed, except by a majority of all of the aldermen elect, applies to a resolution fixing a *per diem* compensation for the street commissioner, under a provision requiring the council to determine annually the salary to be paid to the several city officers.

*Mandamus.* Argued January 3, 1893. Granted January 18, 1893.

Relator applied for *mandamus* to compel the respondent

to allow his claim for compensation as street commissioner. The facts are stated in the opinion.

*Lee E. Joslyn,* for relator.

*G. H. Francis,* for respondent.

PER CURIAM. Relator was appointed as street commissioner of West Bay City in April, 1891, for a period of two years. The fiscal year commences on the second Monday in April. The charter provides that the council shall annually determine the salary to be paid to the several city officers, and that the compensation so fixed shall not be increased or diminished, after having been so determined and fixed, until the next annual determination. In April, 1891, the council fixed the compensation of the street commissioner at three dollars per day.

In April, 1892, a resolution was offered in the council fixing the compensation for the year 1892 at three dollars per day. The council was composed of twelve members. The mayor is also a member *ex officio,* but without the right to vote except in case of a tie. When the resolution was acted upon, but eleven aldermen were present. Six voted in favor of the resolution, and five against it. The mayor, presiding, declared the resolution lost. Subsequently, on May 2, 1892, a resolution was offered fixing the rate at two dollars per day. But eleven aldermen were present. Six voted in favor of the resolution, and five against. The mayor, presiding, declared the resolution carried.

The charter provides that no resolution appropriating money shall be passed or adopted except by a majority of all the aldermen elect. It is contended that the resolution by which the salary was attempted to be fixed was one appropriating money, and, failing to receive the votes of a majority of the aldermen elect, it was a nullity, and that

the street commissioner is entitled to receive the compensation fixed in April, 1891.

The charter provides that it shall be the duty of the council, on the first Monday in May of each year, to determine, by resolution to be termed the "annual appropriation bill," the amount necessary to be raised by tax for general purposes, for contingent purposes, the erection of public buildings or parks, etc.   In May, 1892, such a resolution was adopted by the council by the requisite majority of all the aldermen elect, in which the sum of $460 was designated as the amount necessary to be raised for the purpose of paying the compensation of the street commissioner.

It is contended by the respondent that the resolution fixing the salary was not a resolution appropriating money, within the meaning of the charter provision referred to, and that the provision requiring a majority vote of all the aldermen elect refers to the resolution termed the "annual appropriation bill."   This is a very narrow construction of this charter provision.   It certainly was not the intention that a majority vote of all the aldermen elect should be required to get money into the treasury, and but a majority vote of a quorum to get the same money out of the treasury, or to fix the liability of the city; or that the vote upon the resolution determining the amount to be raised by taxation for general purposes should render a like vote unnecessary when the council should come to the appropriation of the sums so raised to the specific purposes for which they were raised.   In other words, it cannot be said that a contract to build a public building, and to fix the city's liability thereunder, although the moneys were to be paid out of the sums so raised, would not require a majority vote of all the aldermen elect.   It will not be contended that the mere determination of the sum neces-

sary "for contingent purposes" affords the protection intended to be secured by this provision, and excepts that sum from the application of this inhibitory provision. Strictly speaking, a resolution fixing a salary cannot be termed an act appropriating money, but it is, nevertheless, an act making an appropriation of the compensation so fixed obligatory. It follows that the resolution acted upon May 2, 1892, having failed to receive the necessary vote under the charter, must be treated as a nullity.

It does not follow, however, that relator is entitled, without any action of the council, to receive the *per diem* fixed in April, 1891. The charter makes it the duty of the council to fix the compensation annually. It was in the power of the relator, by proper proceedings, to compel action to that end by the council. There is a clear distinction between the present case and that class of cases where the salary is fixed for an indefinite period.

In August, 1892, relator presented a bill to the council for 91 days' services, at three dollars per day. On the 15th day of August, 1892, the council, by a vote of seven to five, ordered the payment of the bill as presented. The mayor and recorder, however, relying upon the resolution acted upon in April, and treating that as valid, refused to draw the order upon the treasurer. Subsequently the relator presented bills at the rate of three dollars per day, but the council allowed such bills at two dollars per day.

None of these allowances can be treated as fixing the annual compensation under the charter. It is the duty of the common council to proceed at once to the determination of relator's compensation for the year 1892, as well for that portion of the term already expired as for the unexpired portion, and, when such determination shall have been made, to pay relator accordingly, deducting

any sums which have been received by relator for such term.

A *mandamus* will issue in accordance with these views, with costs to relator.