DEARBORN CITY COUNCIL v MAYOR OF THE CITY OF
DEARBORN

Docket No. 75572. Decided May 20, 1986. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of
granting leave, reversed the judgments of the Court of Appeals
and the circuit court and remanded the case to the circuit court
for entry of a declaratory judgment.

The Dearborn City Council brought an action in the Wayne
Circuit Court against the Mayor of the City of Dearborn seek-
ing a declaration of its right under the 1980 Dearborn City
Charter to set the salary of a department director. The court,
Harold M. Ryan, J., held that the council, and not the mayor,
has the right to fix the salary of appointed officers. The Court
of Appeals, BEASLEY and CAPRATHE, JJ. (SHEPHERD, P.J., dis-
senting), affirmed in an unpublished opinion per curiam
(Docket No. 72129). The Supreme Court initially denied leave to
appeal. 423 Mich 854 (1985). On reconsideration, the denial of
leave was vacated *post*, 860.

In an opinion per curiam, signed by Justices BRICKLEY,
CAVANAGH, BOYLE, and RILEY, the Supreme Court *held:*

Under the Dearborn City Charter, the city council has the
power to set the salary of a department director. However, the
charter also provides that no salary of an officer may be
diminished during the term of the officer's appointment. While
the council may fix a salary after appointment of an officer but
before the commencement of his term, in this case, the coun-
cil's resolution setting the director's salary was formally
adopted after he was lawfully appointed and was exercising his
functions. Thus, the resolution may not apply to the present
officeholder, but may apply to a subsequent appointee.

Chief Justice WILLIAMS concurred in the result.

Reversed and remanded.

Justice LEVIN would grant leave to appeal.

Justice ARCHER took no part in the decision of this case.

*Keating, Canham & Wells* (by *James N. Can-
ham*) for the plaintiff.

*William C. Hultgren,* Corporation Counsel, City of Dearborn, for the defendant.

PER CURIAM. In this case, we are called upon to interpret several provisions of the charter of the City of Dearborn. Because we agree with the Mayor of the City of Dearborn that the Court of Appeals erroneously accepted an interpretation urged by the Dearborn City Council, we reverse the judgment of the Court of Appeals.

I

The Court of Appeals accurately reports that there is no factual dispute between the parties:

> No testimony was taken in the trial court and there is no factual dispute between the parties. The complaint states that on January 5, 1982, the salary for Director of Community Improvement was set at [$41,064] in compliance with the Dearborn City Charter of 1980, section 6.6. On May 14, 1982, the incumbent Director of Community Improvement resigned effective May 31, 1982. On May 18, 1982, the mayor offered this position to Peter McInerny and the council was informed of the proposed appointment the same day. A special council meeting was held on May 27, 1982, at which time the council passed an informal resolution recommending that the salary of the Director of Community Improvement should be decreased. On June 1, 1982, McInerny assumed the office of Director of Community Improvement. Later the same day, the council at a regular meeting passed a resolution reducing the director's salary to $38,000. Pursuant to the terms of the charter, the resolution would have become effective on June 16, 1982; however, on June 11, 1982, the mayor vetoed the resolution. On June 15, 1982 the council adopted a second resolution which effectively overrode the mayor's veto and set the director's salary at $38,000.

The issue is whether the Dearborn City Council succeeded in reducing Mr. McInerny's salary to $38,000. This issue is to be resolved by reference to the following provisions of the charter:

Compensation of Officers:

Section 6.6. The Council shall fix the compensation of appointive offices prior to appointments to the office. The persons so appointed shall receive only one salary which shall, together with such other remuneration as specified in the resolution of the Council, be in full compensation for the appointee's services to the City and shall not receive any other compensation from the City.

Any elective or appointive officer of the City who receives payment of any kind, other than that specified in this charter, for services rendered in the performance of official duties shall immediately surrender such payment to the general fund of the City.

Change in Compensation:

Section 6.8. The compensation for appointive offices shall not be increased or decreased during the term of office to which each officer was appointed. Such compensation may include an annual adjustment to salary equal to the average percentage of increases or decreases in salary paid to the general employees of the City, excluding police and fire employees, and adjustments to benefit programs as received by the general employees of the City excluding police and fire employees.

No additional compensation or payment, in excess of the compensation or payment originally authorized or contracted for, shall be paid to any elective or appointive officer, agent or contractor of the City after the officer, agent or contractor has rendered the required services or has entered into a contract to do so.

Directors of Departments:

Section 10.8. Except as otherwise provided in this charter, all directors of departments shall be appointed by the Mayor and such appointees or

> reappointees shall be certified in writing to the Clerk on or before the third Monday in January following such regular city election and at such other times as may be required to fill vacancies. The deputy director of a department shall act as the director of a department until an appointment is made. The term of office of each director of a department shall begin immediately upon appointment and continue until the term of office of the appointing authority ends, or until a successor is appointed. The appointment of the person as Director of the Department of Law shall be subject to the confirmation of the Council.
>
> The Council may by a vote of five members taken within four weeks after the certification to the Clerk of any person to the position of appointed director of a department, remove from office any person so appointed. The person so removed may not again receive an appointment to the same office during the term of the Mayor. When the Council shall so remove any appointee of the Mayor, the term of office of such appointee shall terminate immediately.

Additionally, § 7.5 provides that regular council meetings are held on the first and third Tuesdays of each month, and § 9.1 states that resolutions passed by the council become effective the Wednesday following the next regularly scheduled meeting.

On June 29, 1982, the city council filed a complaint in circuit court, seeking a declaration of its right to set Mr. McInerny's salary at $38,000. As the Court of Appeals indicated, no testimony was taken in the circuit court. In April of 1983, the circuit court issued an opinion in favor of the city council. The circuit court explained that the provisions of the charter "should not be blindly or literally adhered to when such a construction would fail to advance the provision's spirit and purpose":

The Court finds that Peter McInerny can not establish a viable contract right to the salary Frederick Hoffman received as Director of Community Improvement. He could not reasonably rely upon the "Mayor's" representation of a $41,000.00 salary level for the position as the "Council" alone holds the responsibility for setting salaries. The "Council" specifically expressed their [sic] desire and intent to reduce the salary to a level consistent with the duties and responsibilities that Mr. McInerny would assume prior to Mr. McInerny's assuming the full responsibility of his position. Any speculation that the "Council" was motivated by personal or political reasons remains unsupportable. If this were the "Council's" desire, they could have simply exercised their right to remove McInerny from office under Charter Section 10.8.

The provisions of any Charter should not be blindly or literally adhered to when such a construction would fail to advance the provision's spirit and purpose. The Charter Sections in question have been traditionally viewed as an attempt to prevent the underhanded forcing of a party out of office through vast decreases in the compensation paid to that office. This claim has not been asserted in this case because this was obviously not the "Council's" objective. The Supreme Court decision in *Wesch* [*v Common Council of Detroit*, 107 Mich 149; 64 NW 1051 (1895)] must control the interpretation of Charter Sections 6.6, 6.8 and 10.8, thereby preserving the "Council's" right to fix an officer's compensation within a reasonable time after becoming aware of a new appointment and prior to the full assumption of the duties of the office and also preserving Dearborn's strong Mayoral form of government by limiting the time frame within which the "Council" must act.

Several weeks later, the circuit court entered a declaratory judgment[1] which, in light of the earlier

[1] This cause having come on to be heard upon the Complaint

opinion, has been interpreted as a judgment in favor of the city council.

The Court of Appeals affirmed.[2] It explained that "to interpret the charter as urged by defendant would contradict the clear intent of the charter provisions and would elevate form over substance":

> The common understanding of the charter provisions discussed above is to give the council the power to set the salary of an appointive office before the appointee's term begins. The term of an appointee begins when he or she takes office. The apparent purpose of the provisions is to give the council control over the city's purse strings.
>
> In this case the formal resolution decreasing the director's salary did not occur until June 1, 1982, the same day McInerny began his term. According to section 9.1, that resolution would not have become effective until the Wednesday following the next regularly scheduled meeting, i.e., June 16, 1982; however, a special council meeting was held on May 27, 1982, before Mr. McInerny's term commenced, for the purpose of discussing and resolving the salary issue. The council on May 27, 1982 had the authority to pass a formal resolution decreasing the director's salary, but did not do so, instead adopting a recommendation stating that it believed the director's salary should be reduced. According to representations of plaintiff's counsel

filed by the said Plaintiffs and the said parties being before the Court on oral argument on the said 12th day of April, 1983 and briefs heretofore having been filed by both Plaintiff and Defendant; and the Court being fully advised in the premises:

It is adjudged that the Plaintiffs presently and prospectively under the Charter of the City of Dearborn more specifically, Chapter 6, Section 6.8 and 10.8 have the right to adjust salary levels of appointed offices whenever a vacancy is created in any appointed office as more fully described in Chapter 6, Section 6.5 and providing Plaintiffs further comply with all other Charter provisions.

[2] Unpublished opinion per curiam of the Court of Appeals, decided November 26, 1984 (Docket No. 72129).

at oral argument, the council on May 27, 1982 passed a recommendation rather than a formal resolution because the mayor's legal counsel advised them that a formal resolution would be illegal. Since the council did not have legal representation present at that time, they apparently made the informal resolution in the spirit of cooperation, and at the very next meeting, the following Tuesday, formally passed the resolution lowering the director's salary.

We believe that to interpret the charter as urged by defendant would contradict the clear intent of the charter provisions and would elevate form over substance. The council on May 27, 1982, took such action as they believed appropriate and in the spirit of cooperation. The timing of the former director's resignation and the appointment of the new director should not be permitted to undermine the council's clearly stated power to set the salary of an in-coming appointee when the previous appointee resigns prior to the expiration of his scheduled term.

We conclude that the council did act within the power conferred by the charter provisions in decreasing the director's salary on June 1, 1982.

Writing in dissent, Judge SHEPHERD explained his view that although the city council had succeeded in reducing the salary to $38,000, the reduction could not take effect during Mr. McInerny's present term of office:

I would find from the undisputed evidence that the Council's formal resolution, which is the only method whereby the Council exercises its legislative function, was adopted and became effective after the new appointee took office. Under the charter, such a resolution cannot apply to Mr. McInerny. The Council's reliance on *Wesch v Common Council of Detroit,* 107 Mich 149; 64 NW 1051 (1895), is misplaced. Under a charter provision stating that the salary of no officer shall be dimin-

ished during the term for which he is appointed, the *Wesch* Court held that the council may, after the appointment of an officer but before the commencement of his term, fix his salary at a sum less than that paid to the incumbent for the preceding term. In *Wesch,* the effective date of the appointment came after the resolution. In the instant case, the new appointee was already lawfully appointed and exercising his functions before the Council resolution was formally adopted and clearly at least two weeks before it became effective.

I do not question the validity of the resolution which from this record I perceive to be currently in effect. The resolution which sets the salary of the Director of Community Improvement at $38,000 may not, however, apply to the present officeholder, Mr. McInerny during his present term of office. Unless changed in the interim, the $38,000 salary will apply the next time an appointment is made to the office in question. I find this to be no interference with the concept of the separation of powers since each branch of government is left with the powers granted to it by the charter. The Council had the power to cause the present salary of the office to be fixed at $38,000 by removing Mr. McInerny within four weeks of his appointment. That is the method given to the Council by the charter as a means of perpetuating the check-and-balance system within the City of Dearborn. That the Council failed to exercise that power does not diminish in any way the charter-created divisions of authority between the executive and legislative branches of city government.

The Mayor has applied to this Court, seeking leave to appeal.

II

In arguing the substantive issue, both parties cite *Wesch v Common Council of Detroit, supra,* p

150. In *Wesch,* the city charter provided that the common council would determine the compensation of each city official and that the compensation could not "be diminished during the term for which he was elected or appointed." Wesch was appointed meat inspector, a position which had previously commanded an annual salary of $1,200. Wesch was appointed on June 19, 1894, and "qualified" on June 20, 1894, for a term of office beginning July 1, 1894, and ending June 30, 1895. After Wesch was qualified, but before he assumed the duties of his office, the common council reduced the meat inspector's salary to $5 per year. This Court affirmed the circuit court's denial of mandamus:

> Bad faith or improper motive cannot be inferred from the facts stated, or presumed in the absence of statements upon which such an inference can be predicated; and we must therefore assume that good reasons existed for the reduction of the compensation from the former figure, and the payment of a merely nominal salary. When the petitioner was appointed, he knew that the salary of the office had not been fixed for the term for which he was appointed. His appointment and acceptance were subject, not only to the right of the council, but to its duty as well, to fix the salary. *Fournier v West Bay City,* 94 Mich 463 [54 NW 277 (1893)]. [*Id.,* 151.]

As Judge SHEPHERD explained, *Wesch* is distinguishable from the present case. Mr. McInerny assumed his office on June 1, 1982, and the Dearborn City Council's formal resolution was not adopted until later that day and did not become effective until a number of days later. We are persuaded that Judge SHEPHERD's analysis is sound and that the circuit court has erred for the reasons stated by Judge SHEPHERD in his dissent.

Accordingly, in lieu of granting leave to appeal, we reverse the judgments of the Court of Appeals and the circuit court, and we remand this case to the circuit court for entry of a declaratory judgment that is consistent with this opinion. MCR 7.302(F)(1).

BRICKLEY, CAVANAGH, BOYLE, and RILEY, JJ., concurred.

WILLIAMS, C.J. I concur in the result.

LEVIN, J. I would grant leave to appeal and set this case for argument and submission.

ARCHER, J., took no part in the decision of this case.